IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


------------------------------------------------------ :
ROBERT DODARO,                                        : CASE NO.  1:08-CV-0508
                                                      :
                                          Plaintiff   :
                                                      :
                         -vs-                          :
                                                      : MEMORANDUM OF OPINION AND
                                                      : ORDER GRANTING DEFENDANT'S
SOCIETY FOR HANDICAPPED                               : MOTION FOR SUMMARY JUDGMENT
CITIZENS, INC.                                        :
                                                      :
                                         Defendant.   :
------------------------------------------------------ :


UNITED STATES DISTRICT JUDGE LESLEY WELLS


        Plaintiff, Robert Dodaro, initiated this lawsuit alleging violation of his rights under

the Family Medical Leave Act ("FMLA") and age discrimination under O.R.C. §4112.02,

et seq.  (Docket #1).  Mr. Dodaro filed this action after he was terminated from his

position as a maintenance worker for Defendant, Society for Handicapped Citizens, Inc.

("Society"), following a prolonged back problem.

        On 27 March 2009, Society moved for summary judgment (Docket #25).  Mr.

Dodaro opposed the Society's motion (Docket #32). Society replied (Docket #33) and

Mr. Dodaro sur-replied.  (Docket #36).  For the reasons discussed below, the Court will

grant Defendant's motion for summary judgment.

## I.    BACKGROUND

Society is "a non-profit organization whose mission is to serve handicapped adults and their families[.]" (Docket #25 at 3).  Society hired Mr. Dodaro as a maintenance worker in October 1986.  (Docket #1).  In 1997 or 1998, Mr. Dodaro was promoted to Director of Maintenance.  (Docket #1 at ¶2; Docket #25 at 3).  In the Spring of 2006, Society hired a new executive director (Janine Dalton).  (Docket #25 at 3). Ms. Dalton reduced the number of directors and realigned the remaining director's duties, thereby eliminating the Director of Maintenance position held by Mr. Dodaro.  Id.    Each of the directors was given the opportunity to apply for a new director position.  Id.  Mr. Dodaro did not apply.  Id.  Under the restructuring, one person was to serve as director of finance and maintenance, and Christine Parker was placed in that position.  (Id. at 4).  Mr. Dodaro was offered his original position as a maintenance worker, which he accepted.  (Id. at 3; Docket #32 at 1).  Although the position of maintenance worker typically paid less than a director position, Society did not decrease Mr. Dodaro's salary and instead gave him a raise.  (Docket #25 at 3; Exhibit D to Deposition of Robert Dodaro of 19 September 2008 ("Dodaro Dep. I")).  On 30 March 2006, Mr. Dodaro signed a form acknowledging his job duties, which stated, among other things, that to be qualified for the job of maintenance worker, an employee must be able to lift at least 75 pounds.  (Docket #25 at 4; Exhibit E to Dodaro Dep. I).

On 27 July 2006, Mr. Dodaro requested leave under the FMLA.  (Docket #1).  On 3 August 2006, Society's human resource manager, Lynne Emmons, sent a letter to Mr. Dodaro granting his leave request (Docket #1) and outlining Society's FMLA policy. (Docket #25 at 4; Docket #32 at 2).  The letter indicated that Mr. Dodaro's leave would

begin on 1 August 2006, would last 12 weeks, and enclosed a Physician Certification

Form for Mr. Dodaro's doctor to complete.  (Id; Exhibit G to Dodaro Dep. I).   Mr.

Dodaro's doctor (Dr. Ghoubrial) completed the Certification Form on 8 August 2006.

(Docket #25 at 4; Docket #32 at 2).  On the form, Dr. Ghoubrial indicated that Mr.

Dodaro had been diagnosed with sciatica, could not perform the functions of his job in

the short-term, and did not indicate a date that Mr. Dodaro could return to work.  (Exhibit

I to Dodaro Dep. I).

On 23 August 2006, Mr. Dodaro gave Ms. Parker a prescription pad note from

Dr. Ghoubrial stating that Mr. Dodaro could not return to work until 5 September 2006.

(Docket #25 at 4; Docket #32 at 2; Exhibit J to Dodaro Dep. I).  At the 23 August 2006

meeting, Ms. Parker asked Mr. Dodaro about his ability to do the functions of a

maintenance worker when he returned. Id.   Following the meeting, on 28 August 2006,

Ms. Emmons sent a letter to Mr. Dodaro enclosing the Society's Certification of

Physician form and a copy of the maintenance worker job description.[1]   (Docket #25 at

4-5; Docket #32 at 2; Exhibit K to Dodaro Dep. I).  The Certification form listed various

activities, the frequency that Mr. Dodaro would engage in such activities, and asked the

physician to circle "yes," or "no," to indicate Mr. Dodaro's ability to engage in each

activity at the required frequency level.  (Exhibit K to Dodaro Dep. I).   Included among

the activities listed were "Lifting," "Carrying", "Pushing," and "Pulling," all of which were

done "Frequently" with a "Max wt. [of] 75#."   Id.  The 28 August 2006 letter also

referenced concerns Mr. Dodaro had expressed to Ms. Emmons on 23 August 2006,

---

[1]This job description form included in the letter was identical to the form that Mr. Dodaro signed on
30 March 2006, less Mr. Dodaro's signature.

3

about his ability to do the job. Id. Society's letter asked Mr. Dodaro to "clarify and evaluate [his] ability to perform [his] duties" because Society was "unclear of what limitations, if any, [his] condition [would] impose on [his] ability to perform [his] job duties." Id. The letter finally notified Mr. Dodaro that the Certification form would need to be completed by Dr. Ghoubrial before Mr. Dodaro could return to work. Id. On 6 September 2006, Society received another prescription pad note from Dr. Ghoubrial stating that Defendant could not return to work until 17 October 2006. (Docket #35 at 5; Docket #25 at 2; Exhibit M to Dodaro Dep. I).

On 22 September 2006, Mr. Dodaro submitted the completed Certification form, which indicated that Mr. Dodaro's back condition was lifelong and limited Mr. Dodaro's ability to lift, carry, push, or pull to 25 pounds. (Docket #25 at 5; Docket #32 at 2; Exhibit L to Dodaro Dep. I).

On 2 October 2006, Ms. Emmons sent a letter to Mr. Dodaro asking that Dr. Ghoubrial provide an opinion as to Mr. Dodaro's "ability to perform the essential functions" of his job. (Docket 25 at 5; Exhibit O to Dodaro Dep. I). Specifically, Society asked Mr. Dodaro, with the aid of Dr. Ghoubrial, to provide: "(1) a specific diagnosis; (2) an explanation of what caused the condition to commence in July 2006; (3) [his] current limitations in regard to specific jobs, including those on the attached list; and (4) [his] prognosis." (Id.; Docket #32 at 3). The letter stated that the information requested would help Society "to understand the specific nature of [his] condition and to determine [his] ability to safely and substantially perform [his] job duties without a risk of harm to [him]self or others." (Exhibit O to Dodaro Dep. I). Society offered to communicate

4

directly with Dr. Ghoubrial if Mr. Dodaro preferred.  Id.  Included with the letter was the list of specific job duties referenced in item three of the letter.  (Docket #32 at 3).

Mr. Dodaro did not obtain the requested information from Dr. Ghoubrial because the doctor told him that "he had already given them his opinion" on the release and that further information "would cost them $300 for him to review it."  (Docket #25 at 5; Docket #32 at 3).   Instead, Mr. Dodaro presented Society with another prescription pad note from Dr. Ghoubrial, dated 4 October 2006, stating, "Pt. [w]as released to go back to work 9/22/2006 as indicated by my signature on Cert. of Physician on that date [w]ith noted limitations."  (Id.; Exhibit Q to Dodaro Dep. I).  Mr. Dodaro also provided this information to Ms. Emmons on 5 October 2006 by telephone.  (Docket #25 at 5; Docket #32 at 3).   As a follow up to the 4 October 2006 note and 5 October 2006 telephone call, Society sent another letter to Mr. Dodaro, dated 5 October 2006, reiterating that the requested information was "still needed to determine your ability to safely and substantially perform your job duties without a risk of harm to yourself or others." (Docket #25 at 6; Docket #32 at 3; Exhibit P to Dodaro Dep. I).

On 6 October 2006, Ms. Emmons sent Mr. Dodaro yet another letter referencing a "recent telephone conversation," during which Mr. Dodaro allegedly "appeared to be very upset" about the request for additional information.  (Exhibit R to Dodaro Dep. I). In this letter, Ms. Emmons explained that Society sought the additional information because of the "noted limitations" language in Dr. Ghoubrial's 4 October 2006 note.  Id. The letter again explained that the information was needed so that Society could "determine whether your condition constitutes a disability, whether you are able to

5

perform the essential functions of your job with or without reasonable accommodation[.]" (Id.; Docket #32 at 3).

Mr. Dodaro responded by a letter dated 8 October 2006, asserting again that Dr. Ghoubrial had authorized him to return to work on 22 September 2006, with limitations, that he was able to perform the essential functions of his job with "presently indicated limitations," and that he and his physician had "complied with any and all reasonable requests" for information.  (Docket #25 at 6; Docket #32 at 3; Exhibit S to Dodaro Dep. I).  Mr. Dodaro's letter also stated that he was exercising his rights under HIPAA not to release any further medical information and noted that "it is unlawful to discriminate against employees based on any number of factors including, but not limited to, age and disability."  (Id.; Docket #25 at 6).

On 17 October 2006, Emmons sent Mr. Dodaro another letter, stating that because Mr. Dodaro had asked Society to provide him with "reasonable accommodation for a condition which potentially may be considered a disability," Society was entitled to require documentation to substantiate the disability under the Americans with Disabilities Act ("ADA").  (Docket #25 at 6; Docket #32 at 4; Exhibit T to Dodaro Dep. I).  The letter stated that Mr. Dodaro could not return to work without the requested information.  Id.

Mr. Dodaro replied to Society's 17 October 2006 letter on the same day stating that it was Society, not him, that "raised the issue of disability."  (Docket #25 at 6; Docket #32 at 4; Exhibit U to Dodaro Dep. I). Mr. Dodaro's letter further stated that he was making "no such claim of disability."  Mr. Dodaro also asserted that Society was treating his "situation substantially different from other [Society] employees."  (Exhibit U

6

to Dodaro Dep. I).  Mr. Dodaro concluded his letter demanding that Society return him to work or he would "seek redress in another forum."  Id.

On 23 October 2006, Ms. Emmons responded to Mr. Dodaro's 17 October letter asking Mr. Dodaro to provide Society a written statement as to whether it is his position that his medical condition was a disability to which Society would be legally required to accommodate.  (Docket #25 at 7; Docket #32 at 5; Exhibit V to Deposition of Robert Dodaro of 22 January 2009 ("Dodaro Dep. II")).  The letter further indicated that if Mr. Dodaro did not have a disability, Society did "not have a legal obligation to provide [him] with the accommodations [he] requested."  (Docket #25 at 7; Exhibit V to Dodaro Dep. II).  The letter finally indicated that if Mr. Dodaro did not provide a written statement of his "final position" as to whether he was claiming a disability by 30 October 2006, Society would presume that he was not claiming a disability as "stated in [his] most recent letter" and Society would "proceed accordingly."  (Docket #32 at 5; Exhibit V to Dodaro Dep. II).

Society states that it sent Mr. Dodaro yet another letter on 27 October 2006 "explaining that failure to return after completion of 12 weeks of FMLA leave would result in his termination on October 31, 2006."  (Docket 25 at 7).  Mr. Dodaro acknowledges the 27 October 2006 letter but states that the letter only informed him that his health benefits would terminate for failure to return to work, not that he would be terminated.  The 27 October 2006 letter is not part of the record before this Court.

On 29 October 2006, Mr. Dodaro responded to Society's 23 October and 27 October letters again stating that he was authorized and able to return to work on 22 September 2006, "with the specified limitations," but was turned away.  (Docket #25 at

7

7; Exhibit W to Dodaro Dep. II).  Mr. Dodaro then indicated that he would be "filing formal complaints with the United States Department of Labor and the United States Equal Employment Opportunity Commission to seek a reasonable and lawful resolution of this matter."  (Id.; Docket #32 at 5).

On 31 October 2006, Society sent Mr. Dodaro a letter terminating his employment because he had exhausted his FMLA leave, could not return to work and perform the essential functions of his job without accommodation, and had not provided the information necessary for Society to determine if he was entitled to such accommodation.  (Docket #25 at 7; Exhibit X to Dodaro Dep. II).

On 9 November 2006, Mr. Dodaro filed a Charge of Discrimination with the Ohio Civil Rights Commission and the EEOC alleging sex, age, and disability discrimination. (Docket #25 at 7; Exhibit AA to Dodaro Dep. II).  Society maintains that the EEOC issued a no cause finding and a notice of rights was sent to Mr. Dodaro on 29 November 2007.  (Docket #25 at 7).[2]

In support of its motion for summary judgment, Society cites the deposition testimony of Mr. Dodaro and exhibits thereto.  Mr. Dodaro opposes the motion citing his own deposition testimony and exhibits, his affidavit, as well as, the deposition testimony of current Society employees, Ms. Dalton, Ms. Emmons, and Carolyn Hartman, and former Society employees, Carol Eacott, Susan Ellsworth, and Ms. Parker.

---

[2]Society's motion cites Exhibit BB as being the no cause finding and/or notice of rights, but the exhibit is not part of the record. Mr. Dodaro does not challenge that the finding and notice were issued or the date Society alleges they were issued.

8

## II.    SUMMARY JUDGMENT STANDARD

When "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment shall be entered in favor of a moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial", quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986), quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

9

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

**III.     LAW AND ANALYSIS**

**A.     FMLA (Count Two).**

In his complaint, Mr. Dodaro alleges that Society retaliated against him by terminating him "while he was out on FMLA leave."  (Docket #1 at 3).  In his brief in opposition to Society's motion for summary judgment, Mr. Dodaro alleges that Society

retaliated against him for exercising his FMLA rights <u>and</u> interfered with his FMLA rights. (Docket #32 at 9).  Society maintains that Mr. Dodaro was terminated because he did not return to work or request an accommodation prior to the exhaustion of his FMLA leave.  (Docket #25).

Under the FMLA, qualifying employees are entitled to up to twelve weeks of unpaid leave each year "if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'"  <u>Edgar v. JAC Products, Inc.</u>, 443 F.3d 501, 506, <u>quoting</u> 29 U.S.C. § 2612(a)(1)(D)). The parties do not dispute that Mr. Dodaro was entitled to 12 weeks of FMLA leave, that Mr. Dodaro's FMLA leave commenced on 1 August 2006, that the 12-week period ended on 30 October 2006, and that Mr. Dodaro did not return to work and/or request an accommodation prior to 30 October 2006.

Qualifying employees who return to work within that 12-week period are entitled to be reinstated to their previous position, or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1).  Generally, "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave."  <u>Edgar</u>, 443 F.3d at 506-07, <u>citing</u> <u>Cehrs v. Northeast Ohio Alzheimer's Research Center</u>, 155 F.3d 775, 784-85 (6th Cir.1998) (finding no FMLA violation because the evidence was undisputed that the employee would not have been able to return to work by the statutory deadline);  <u>Williams v. Toyota Motor Mfg., Ky., Inc.</u>, 224 F.3d 840, 845 (6th Cir. 2000) (concluding that an employee had suffered no harm when she was terminated because she was unable to resume her duties by the

11

end of the FMLA leave period), *rev'd on other grounds*, 534 U.S. 184 (2002). Once the 12-week period ends, employees who remain "unable to perform an essential function of the position because of a physical or mental condition ... [have] no right to restoration to another position under the FMLA." 29 C.F.R. § 825.21(b).

The Sixth Circuit acknowledges two separate theories upon which a party can recover under the FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." Killian v. Yorozu Automotive Tennessee, Inc., 454 F.3d 549, 555 (6th Cir. 2006), quoting Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004). Mr. Dodaro's complaint only alleges relief under the retaliation theory, but his brief in opposition alleges that he is entitled to relief under both theories. The Court will consider each theory because Society has had the opportunity to address Mr. Dodaro's arguments related to the interference theory in its Reply, and because the basis for each of Mr. Dodaro's claims is the same; i.e., that Society interfered with his FMLA benefits in retaliation for Mr. Dodaro's 29 October 2006 letter that indicated that he intended to file an EEOC complaint against Society. (Docket #32 at 10-11).

1.     Retaliation/Discrimination.

To establish an FMLA discrimination/retaliation claim, Mr. Dodaro must demonstrate that: (1) he was engaged in an activity protected by the FMLA; (2) Society knew that he was exercising his rights under the FMLA; (3) Society took an employment action adverse to him after learning that he was exercising his FMLA rights; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." Killian, 454 F.3d at 556; Arban v. West Publ'g Corp., 345 F.3d

12

390, 404 (6th Cir. 2003).  Mr. Dodaro "bears the burden of demonstrating a causal connection."  Arban, 345 F.3d at 404.   Once Mr. Dodaro establishes his prima facie case, the burden then shifts to Society to provide evidence of a legitimate, non-discriminatory reason for the adverse employment action.  Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir. 2001), citing McDonnell Douglas Corp., 411 U.S. 792, 802-04 (1973).   If Society meets its burden, the burden shifts back to Mr. Dodaro to demonstrate that the offered reason is pretext for unlawful discrimination.  Skrjanc, 272 F.3d at 315, citing McDonnell, 411 U.S. at 804-06.   Society argues that Mr. Dodaro did not establish his prima facie case because he cannot demonstrate that he was terminated because he exercised his FMLA rights.

Plaintiff may meet his burden through direct or circumstantial evidence.  "An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in" McDonnell Douglas.  Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 707 (6th Cir. 2008).  However, when such an action is based upon direct evidence of discrimination, "a plaintiff need not proceed under the McDonnell Douglas analysis."  (Emphasis added).  Id., citing DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004).  Direct evidence "proves the existence of a fact without requiring any inferences." Blair v. Henry Filters, Inc., 505 F .3d 517, 523 (6th Cir. 2007) (internal citation omitted).

Mr. Dodaro argues that his termination two days after he notified Society that he would be filing an EEOC complaint is direct evidence of retaliation.  Mr. Dodaro argues that the temporal proximity between his notice and his termination, when combined with Society's "increased scrutiny" of his FMLA claim, satisfies the causation element.

13

(Docket #32 at 12, citing Hamilton v. General Electric Co., 556 F.3d 428 (6th Cir. 2009)).

Mr. Dodaro's argument is without merit. In Hamilton, which was not a FMLA case, the employee was terminated and the employer increased its scrutiny of the employee's *work* after the employee filed his EEOC claim. Here, Mr. Dodaro was terminated before he filed his EEOC claim. Moreover, Society never increased its scrutiny of Mr. Dodaro's work. Instead Society requested information from Mr. Dodaro related to his ability to return to work while Mr. Dodaro was on FMLA leave. It is true that temporal proximity between a protected activity and termination can establish a prima facie case of retaliatory discrimination when combined with other "compelling evidence." Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000). However, this is not a temporal proximity case. Mr. Dodaro only threatened to file an EEOC claim prior to being terminated. There is no case law to support a retaliation claim where an employee merely threatens to engage in a protected activity, but does not so engage until after the adverse employment action. Moreover, even if such determination could be made, it would require the fact-finder to make an impermissible inference and, therefore, is not direct evidence of retaliation. See Blair, 505 F.3d at 523.

Similarly, Mr. Dodaro has not presented any circumstantial evidence of retaliatory discrimination from which a fact-finder could infer that the reason Mr. Dodaro was terminated was because he engaged in a protected activity. Instead, in his discussion of indirect or circumstantial evidence, Mr. Dodaro argues that the reason Society gave for his termination should not be believed or was pretextual, which "permits a finding of retaliation by the factfinder" when combined with plaintiff's prima facie case. (Docket

14

#32 at 14).  But, Mr. Dodaro has not established his prima facie case that Society retaliated against him because he threatened to engage in a protected activity, and thus, the burden did not shift to Society to establish a legitimate non-discriminatory reason for Mr. Dodaro's termination, or to Mr. Dodaro to establish that the stated reason was pretextual.  In other words, Mr. Dodaro argues step three of the  McDonnell Douglas burden-shifting framework without meeting his obligations under step one.

2.    <u>Entitlement/Interference</u>

Mr. Dodaro next argues that Society interfered with his FMLA rights by terminating him "for attempting [to] oppose and/or complain about [Society's] alleged unlawful practices under the FMLA, for attempting to file a charge or initiate a proceeding under the FMLA, and/or for attempting to give information in connection with and/or testify concerning same against his employer." (Docket #36 at 3).  Society argues that it did not interfere with Mr. Dodaro's FMLA rights because he could not be reinstated and was terminated because he was "'incapable of returning to work or performing an essential function of [his] position at the end of his statutory-leave period.'" (Docket #25 at 14, <u>quoting</u>, <u>Edgar</u>, 443 F.3d at 508).  Society further maintains that even if it had terminated Mr. Dodaro because he threatened to file an EEOC claim, such facts do not support a claim for interference.

To establish an FMLA interference claim, Mr. Dodaro must demonstrate that: (1) he was an eligible employee; (2) Society was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave Society notice of his intention to take leave; and (5) Society denied him FMLA benefits to which he was entitled." <u>Killian</u>, 454 F.3d at 556; <u>Walton v. Ford Motor Co.</u>, 424 F.3d 481, 485 (6th Cir. 2005).

15

Once again, the only evidence Mr. Dodaro provides to support his claim of interference is that Society terminated him after he threatened an EEOC action. As with his retaliation claim, Mr. Dodaro has not cited any authority for the proposition that an employer interferes with an employee's FMLA rights when it terminates that employee because he has threatened EEOC action. Thus, Mr. Dodaro has not established a prima facie case for interference under the FMLA and the burden does not shift to Society to demonstrate a legitimate, non-discriminatory reason for terminating Mr. Dodaro.

Because Mr. Dodaro cannot establish that Society interfered with an FMLA benefit to which he was entitled and/or retaliated against him for engaging in a protected activity under the FMLA, summary judgment will be granted in favor of Society on Count Two of Mr. Dodaro's complaint.

### B.    State Law Age Discrimination (Count I)

Mr. Dodaro alleges that Society "violated Ohio Revised code §§4112.02 *et seq.*," when it discriminated against him "on the basis of age[,]" in violation of O.R.C. §4112.14. (Docket #1 at ¶10). Society alleges that Mr. Dodaro failed to plead or offer any evidence to establish a prima facie case for age discrimination. (Docket #25 at 9; Docket #33 at 18-19). Mr. Dodaro alleges that because he threatened to file an EEOC claim, was terminated two days later, and later filed an EEOC claim, which listed age discrimination as a basis, he "may prevail on his age discrimination claim based on direct evidence." (Docket #32 at 17). Mr. Dodaro also argues that deposition testimony

16

of current and former Society employees is indirect evidence of discrimination.   (Id. at 17-18; Docket #36 at 11-12).

Under Ohio law, it is unlawful for an employer to discriminate against an employee on the basis of age.  O.R.C. §§ 4112.02(A) and 4112.14.   "The federal Age Discrimination in Employment Act ('ADEA') is applicable to state law claims brought pursuant to Ohio age discrimination law."  Minadeo v. ICI Paints, 398 F.3d 751, 763 (6th Cir. 2005), quoting  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir.1998)(holding that "[u]nder Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis").  "A plaintiff may establish a case under the ADEA either by presenting direct evidence of discrimination, or by establishing a prima facie case of age discrimination under the McDonnell-Douglas burden-shifting analysis."  Minadeo, 398 F.3d at 763, citing Rowan v. Lockheed Martin Energy Systems, 360 F.3d 544, 547 (6th Cir. 2004).

To establish an age discrimination claim, Mr. Dodaro must demonstrate that 1) he was a member of a protected class; 2) he was discharged; 3) he was qualified for the position he held; and 4) he "was replaced by a person outside the protected class" or a similarly situated non-protected employee was treated more favorably.  Minadeo, 398 F.3d at 764.  See also Cox v. DOT, 53 F.3d 146, 150 (6th Cir. 1995); Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002).  "There must be a link or nexus between the discriminatory statement or conduct and the prohibited act of discrimination to establish a violation of" O.R.C. §4112.14.  Byrnes v. LCI Communication Holdings Co., 77 Ohio St.3d 125, 130 (1996).

17

There is no dispute that Mr. Dodaro was a member of a protected class and was discharged.  Mr. Dodaro states that he was qualified for the position because he had diploma or equivalent work experience and/or Society waived any qualifications because "they did not check his education or lifting ability on 30 March 2006," when he executed the new job description. (Docket #32 at 19).  Mr. Dodaro finally alleges that he was told that "two guys just picked up" his work and/or Society had access to volunteers to do his work, thereby demonstrating that Mr. Dodaro was replaced by substantially younger workers.  Id.

Mr. Dodaro alleges that it is direct evidence of age discrimination that he was terminated two days after he threatened an EEOC action.  Not only would the fact-finder be required to make an inference to reach such conclusion, Mr. Dodaro has not cited any authority to support his position, as discussed above.

Mr. Dodaro alleges that various statements by Society employees and former employees are indirect evidence of age discrimination.  Mr. Dodaro cites the following:

1.  Deposition testimony from Ms. Hartman that she thought Ms. Parker's mission was to "make it difficult to get Bob back to work, get Bob out[.]" (Docket #32 at 18, citing Deposition of Carolyn Rose Hartman at 23-24).

2.  Deposition testimony from Ms. Hartman that, "it did seem odd that there was no - we couldn't accommodate the lifting thing." (Id., citing, Hartman Dep. at 24).

3.  Deposition testimony from Ms. Hartman that she heard from two other employees that Ms. Parker had said that Mr. Dodaro "should retire."  (Id., citing Hartman Dep. at 26) and that this statement indicated to her an "age-related issue." (Id., citing Hartman Dep. at 29).

4.  Deposition testimony of a former LPN at Society, Susan Ellsworth, that she recalled hearing that if employees are not a hundred percent that Society did not want them.  (Id., citing Deposition of Susan Ellsworth at

18

31).  Ms. Ellsworth did not recall from whom she heard this. (Ellsworth Dep. at 32).

5.  Deposition testimony from Ellsworth that she heard from former employee and director Greg Kunkler that Mr. Dodaro should just retire and heard other people say the same.  (Docket #32 at 18, <u>citing</u> Ellsworth Dep. at 22, 33).

6.  Deposition testimony from Ms. Ellsworth that "if her memory serve[d]" her correctly, she recalls that Roger Hass told Roger Ware who told a table of people, including her, that Ms. Dalton said that Society wanted to get rid of Mr. Dodaro because of his age. (<u>Id</u>., <u>citing</u> Ellsworth Dep. at 34).

We initially note that Mr. Dodaro does not state that he directly heard any age-related comments from his supervisors, and he further acknowledges that when he questioned Ms. Dalton about the rumors that Society was trying to get rid of him because of his age, Mr. Dodaro testified that Ms. Dalton simply told him that she thought he was going to retire anyway.  (Docket #32 at 18; Affidavit of Robert Dodaro, attached as Exhibit 1 to Docket #32).  This does not constitute an age-related statement from a superior.   Moreover, the only testimony cited above that references age are items three and six.  Item three was merely Ms. Hartman's opinion and item six was not a clear memory, and is more akin to gossip among co-workers than anything else.  It is well-established that statements that contain "nothing more than rumors, conclusory allegations and subjective beliefs *** are wholly insufficient evidence to establish a claim of discrimination as a matter of law." <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 585 (6th Cir. 1992).   "[S]tatements by non-decision makers [are] insufficient to establish" circumstantial evidence. <u>Blair.</u>, 505 F.3d at 525, <u>citing</u> <u>Smith v. Leggett Wire Co.</u>, 220 F.3d 752, 759 (6th Cir. 2000).   Moreover, "isolated and ambiguous comments are too

19

abstract to be considered as circumstantial evidence of discrimination[.]" <u>Blair</u>, 505 F.3d at 525, <u>citing</u> <u>Ercegovich</u>, 154 F.3d at 355.

Even if these statements were true, Mr. Dodaro has failed to demonstrate that they were connected to his termination.  There must be "some degree of connection between the comments and the relevant decision if the comments are to be considered even as circumstantial evidence of discrimination."  <u>Blair</u>, 505 F.3d at 525.   Mr. Dodaro has not established that, even if the rumors about Society's intention to terminate him because of his age were true, that his age was, in fact, the cause of his termination. Indeed, Mr. Dodaro argues that he was terminated because he threatened an EEOC action.

Because Mr. Dodaro has failed to establish a prima facie case of age discrimination under O.R.C. §4112.14, Society will be entitled to summary judgment on Count I of Mr. Dodaro's complaint.

## IV.    CONCLUSION

For the reasons set forth above, this Court grants defendant's motion for summary judgment with respect to all of plaintiff's claims against it and plaintiff's complaint is dismissed.

IT IS SO ORDERED.


/s/Lesley Wells_____
UNITED STATES DISTRICT JUDGE


Dated: <u>19 June 2009 </u>

20